IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CT-3180-FL

BRIAN VIGNIERO, )
)
Plaintiff, )
)
v. ) ORDER
)
JERRY LEGGETT, APRIL BROWN, )
AMY GOFF, SHANA LEWIS, ANDREA )
PINO, BRIDGET WHITE, REBECCA )
GREGIO, BRENDA LICAVOLI, JAMES )
BROCK, CHARLENE GIBBS, WALTER )
HOLT, KAYLA JONES, SHILO NORRIS, )
JOSHUA PARTIN, ROBERT RECKLEY, )
and THURNALL ROBERTSON, )
)
Defendant.[1] )

This matter is before the court on defendants' motions to dismiss (DE 77, 82) pursuant to

Federal Rule of Civil Procedure 12(b)(6). Plaintiff responded in opposition to the second motion

to dismiss, and in this posture, the issues raised are ripe for ruling. For the reasons that follow,

defendants' motion to dismiss is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff, a former state inmate, commenced this action by filing a complaint on July 28,

2024, asserting claims for violations of his civil rights pursuant to 42 U.S.C. §§ 1983 and the

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. Plaintiff alleges defendants were

---

[1] The court constructively amends the case caption to reflect dismissal of formerly named defendants Lacante Coates, Christina Diaz, Michael Oakley, Angela Criss, Michael Moreno, Richard Neumeyer, John Steedley, Ryan Moneymaker, Dr. James D. Engleman, and Robert L Toler.

deliberately indifferent to his serious medical needs by delaying medical care for a spinal injury, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Defendants, sued in their individual capacities, are correctional and healthcare staff at the Craven Correctional Institution.

On April 23, 2025, plaintiff filed the operative second amended complaint ("SAC") with defendants' consent, alleging essentially the same claims summarized above. On July 7, 2025, defendants filed the instant motion to dismiss pursuant to Rule 12(b)(6).[2] Defendants argue that the SAC fails to allege sufficient facts to state a claim for deliberate indifference to serious medical needs, fails to allege specific facts as to certain defendants, and that they are entitled to qualified immunity. Plaintiff responded in opposition to the motion.

**STATEMENT OF FACTS**

The facts alleged in the SAC may be summarized as follows. Plaintiff was housed at the Craven Correctional Institution ("Craven CI") during the relevant time period. (SAC (DE 81) at 2).[3] Upon admission to Craven CI, it was charted in plaintiff's medical records that he suffered from degenerative disc disease, which required surgery in 2011, and the condition would flare on occasion causing pain, spasms and at time shooting pain, numbness, and tingling down his legs. (Id.). He also likely had a herniated disc. (Id.). Prior to the events beginning on July 29, 2021, plaintiff was fully functional with use of all of his bodily functions, including full use of his legs, and bowl and bladder function. (Id.).

---

[2] Defendants' first motion to dismiss remains pending, but as explained below it is denied as moot in the circumstances presented here.

[3] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

2

On July 29, 2021, plaintiff performed a light workout in his cell, including squats, crunches, elbow to knee touches, and bicycle kicks, finishing at approximately 6:00 p.m. (Id. at 13). At approximately 7:30 p.m., plaintiff showered and returned to his dorm room, whereupon he felt a sharp pain in his left back and leg. (Id.). As he sat, he felt his left leg go numb. (Id.). Plaintiff tried to walk off the pain, but the pain did not improve. (Id.). Plaintiff laid down to nap hoping his symptoms would resolve by morning. (Id.). Approximately one hour later, plaintiff woke up and could not feel anything from the waist down. (Id.). Additionally, plaintiff had unbearable back pain. (Id.). Plaintiff called defendant Correctional Officer Thurnall Robertson ("Robertson"), explained his pain and inability to move his legs, and requested help. (Id.). Robertson indicated he would seek help from a sergeant or lieutenant. (Id. at 13-14). Plaintiff fell back asleep. (Id. at 14).

Sometime after midnight, in the early morning hours of July 30, 2021, defendant Sergeant Kayla Jones ("Jones") returned, and plaintiff repeated his allegations of unbearable pain and being unable to feel or move his legs. (Id.). Jones told him it was likely a spasm, and since there was no doctor on the medical unit at the time, plaintiff would probably be sent back to his cell. (Id.). No help was provided. (Id.). During his interactions with Robertson and Jones, plaintiff lay in his bed unable to move or feel his legs and unable to move from his bed. (Id.).

Further, from 6:00 p.m., July 29 to 6:00 a.m. July 30, defendant officers Charlene Gibbs ("Gibbs") and Walter Holt ("Holt") had the duties to perform hourly rounds on plaintiff, observe plaintiff's activities, and escort plaintiff to any appointments. (Id. at 14–15). Throughout his interactions with Gibbs and Holt, plaintiff lay in his bed in pain and was unable to move. (Id. at

3

15). During this same time period, defendant Jones also had the duties to perform hourly rounds on plaintiff and observe his activities. (Id.).

Between 9:00 a.m. and 10:00 a.m. on July 30, plaintiff sought assistance from who is believed to be defendant Correctional Officer James Brock ("Brock"), or, in the alternative, defendant Correctional Officer Joshua Partin ("Partin"). (Id. at 16). Plaintiff advised the correctional officer he needed to visit medical because he was in pain and could not feel or move his legs. (Id.). At approximately 11:30 a.m., the correctional officer returned with a wheelchair to take plaintiff to the medical unit. (Id.).

At 11:36 a.m., plaintiff was evaluated by defendants Jerry Leggett ("Leggett"), PA, and April Brown ("Brown"), RN. (Id.). Plaintiff told defendants Leggett and Brown, "I have an old back injury. I worked out last night and everything seemed fine but after my shower, I became numb from the middle of by back down both legs. My left leg is worse than my right, but I really can't move either leg." (Id. at 16–17). Plaintiff also complained of severe back pain. (Id. at 17). Plaintiff was instructed to rest and continue with Tylenol and ibuprofen. (Id.). Defendant Leggett gave plaintiff a hand urinal to use until he could ambulate better. (Id.). Plaintiff was noted to have no gait abnormality, despite being brought to medical in a wheelchair, and normal range of motion of the spine. (Id.). Defendant Leggett prescribed Cyclobenzaprine and Toradol, both muscle relaxers, for 14 days. (Id.). After his medical evaluation, plaintiff was returned to his cell by wheelchair. (Id.). Defendant Brown also issued plaintiff a wheelchair. (Id.).

Once in his cell, plaintiff was assisted from his wheelchair onto his cell bed and given the urinal provided by defendant Leggett. (Id. at 19). Plaintiff remained on his cell bed from

4

shortly before noon July 30 until August 2, 2021. (Id.). During the time relevant to these events, plaintiff was in segregation. (Id.). While in segregation, plaintiff would receive his meals through a slot in the door and protocol required he come to the cell door to receive his food tray. (Id.). Between July 30 and August 2, absent one exception, correctional officers, aware of plaintiff's physical condition, would enter plaintiff's cell and deliver his food tray directly to him contrary to protocol. (Id.).

On July 30 at 12:08 p.m., defendant Rebecca Gregio ("Gregio"), a registered nurse, administered plaintiff's Toradol to him in his cell. (Id.). Plaintiff continued to lie on his bed in severe pain with loss of use and sensation of both legs. (Id.). Defendant Gregio did not chart plaintiff's condition or contact his medical provider. (Id. at 19–20). In addition, defendant Gregio had the authority to order a transfer to a hospital setting. (Id. at 20).

At 3:38 p.m., defendant Brenda Licavoli ("Licavoli") administered plaintiff Cyclobenzaprine. (Id.). Plaintiff continued to lie on his bed in severe pain with loss of sensation and use of both legs. (Id.). Defendant Licavoli did not chart plaintiff's condition or contact his medical provider. (Id.). Defendant Licavoli also had the authority to order a transfer to a hospital setting. (Id.).

From 6:00 a.m. to 6:00 p.m., defendant Partin had duties to perform hourly rounds on plaintiff, feed plaintiff lunch and dinner, overserve plaintiff's activities, and escort plaintiff to any appointments. (Id.). Throughout his interactions with defendant Partin, plaintiff lay in his bed in pain and was unable to move. (Id.).

From 6:00 p.m., July 30 to 6:00 a.m. July 31, defendants Holt and defendant Robert Reckley ("Reckley") were required to perform hourly rounds on plaintiff, observe plaintiff's

5

activities, and escort plaintiff to any appointments. (Id. at 21–22). Throughout his interactions with defendants Holt and Reckley, plaintiff lay in his bed in pain and was unable to move. (Id. at 21–22). During this same time period, defendant Jones also had the duties to perform hourly rounds on plaintiff and observe his activities. (Id. at 22). Defendants Holt, Reckley, and Jones had the authority to remove an inmate to hospital care when presented with an emergency medical need. (Id. at 21–22).

On July 31, 2021, at approximately 8:05 a.m., plaintiff received his medication, Cyclobenzaprine, from defendant Amy Goff ("Goff"), a licensed practical nurse, who was accompanied by defendant Sergeant Shilo Norris ("Norris"). (Id. at 22). During the encounter, plaintiff has his breakfast delivered by a correctional officer. (Id.). Plaintiff asked defendant Norris for help to have his food tray brought to him because plaintiff could not get to the cell door. (Id. at 22–23). Defendant Norris responded, "I don't have to bring you s**t." (Id. at 23). Defendant Norris further commented, "[T]he f****ng guy that punched a window now says he can't feel his legs." (Id.). Neither defendants Goff nor Norris helped plaintiff during this encounter. (Id.). Defendant Goff made no effort to intervene during defendant Norris's conduct. (Id.). Nor did defendant Goff chart plaintiff's condition or contact a medical provider about his medical complaints. (Id.). Defendant Norris had the authority to remove plaintiff to hospital care when presented with an emergent medical need. (Id.).

That same day, defendant Goff provided plaintiff with two more doses of Cyclobenzaprine. (Id. at 23–24). Defendant Goff did not chart plaintiff's condition or contact a medical provider about his medical complaints after either of these visits. (Id.).

6

From 6:00 a.m. to 6:00 p.m. on July 30, defendant Partin had duties to perform hourly rounds on plaintiff, feed plaintiff lunch and dinner, overserve plaintiff's activities, and escort plaintiff to any appointments.   (Id. at 24).   Throughout his interactions defendant Partin, plaintiff lay in his bed in pain and was unable to move.   (Id.).   Defendant Partin had the authority to remove an inmate to hospital care when presented with an emergency medical need.   (Id. at 25).

From 6:00 p.m., July 31 to 6:00 a.m. August 1, 2021, defendant Reckley had the duties to perform hourly rounds on plaintiff, observe plaintiff's activities, and escort plaintiff to any appointments.   (Id.).   Throughout his interactions with defendant Reckley, plaintiff lay in his bed in pain and was unable to move.   (Id.).   During this same time period, defendants Jones and Norris also had the duties to perform hourly rounds on plaintiff and observe his activities.   (Id. at 25–26).   Defendants Reckley, Jones, and Norris had the authority to remove an inmate to hospital care when presented with an emergency medical need.   (Id. at 25–26).

On August 1, 2021, defendant Brown administered plaintiff his Cyclobenzaprine at 8:05 a.m. and 3:40 p.m.   (Id. at 26–27).   Defendant Brown did not chart plaintiff's condition or contact plaintiff's medical providers regarding his condition.   (Id. at 26–27).   From 6:00 a.m. to 6:00 p.m., defendant Partin had duties to perform hourly rounds on plaintiff, feed plaintiff lunch and dinner, overserve plaintiff's activities, and escort plaintiff to any appointments.   (Id. at 27).   Throughout his interactions with defendant Partin, plaintiff lay in his bed in pain and was unable to move.   (Id. at 27–28).

From 6:00 p.m., August 1 to 6:00 a.m. August 2, 2021, defendant Reckley had the duties to perform hourly rounds on plaintiff, observe plaintiff's activities, and escort plaintiff to any

appointments. (Id.). Throughout his interactions with defendant Reckley, plaintiff lay in his bed in pain and was unable to move. (Id.). During this same time period, defendants Jones and Norris also had the duties to perform hourly rounds on plaintiff and observe his activities. (Id. at 28–29).

From the evening of August 1 into the morning of August 2, plaintiff's symptoms continued to worsen, and he became incontinent and urinating on himself. (Id. at 29–30). Because he had no sensation in his lower body, plaintiff did not realize he had urinated until he felt a wet area at his groin with his hand. (Id.). In the early morning hours of August 2, plaintiff heard officer Lacante Coates's ("Coates") voice. (Id. at 30). He called for Coates and informed her he could not feel his legs, he was in pain, and he had urinated on himself. (Id.). Coates was taken off guard by the extremely strong smell of urine, and noted plaintiff was extremely soiled and not moving. (Id.). Coates called for a sergeant or lieutenant. (Id.). Lieutenant Cronk arrived and decided to call medical. (Id.).

Between 11:32 and 11:40 a.m., Ashley Cahoon, a licensed practical nurse, and defendant Leggett were called to plaintiff's cell where they found him lying in his bed, unable to move, and soaked in urine. (Id.). Plaintiff stated he did not know when he needed to void his bladder. (Id.). Reflexes were absent bilaterally, and plaintiff had very little feeling during examination. (Id.). Plaintiff complained to defendant Leggett that he could not move either leg or detect when he needed to urinate. (Id.).

Plaintiff was transferred to medical on a stretcher. (Id. at 31). Defendant Leggett described plaintiff's deep tendon reflexes in his knees and ankles as unresponsive. (Id.). Defendant Leggett noted plaintiff was able to sense pressure on the upper thigh down bilaterally

8

but was unable to move either leg. (Id.). Officials called 911 and plaintiff was transported to a local hospital for emergency evaluation for possible cauda equina syndrome and/or spinal cord injury. (Id.).

On August 2 at 1:05 p.m., plaintiff arrived at Carolina East Medical Center in New Bern, North Carolina. (Id.). Diagnostic studies revealed a clear spinal cord injury. (Id. at 32). On August 3, 2021, at 1:20 p.m., plaintiff was life-flighted to Vidant Health Medical Center and underwent spinal surgery for spinal cord compression at T9-T12 and L3-L4. (Id.). One of plaintiff's operative surgeons noted that, had plaintiff sought help sooner, it would have drastically improved his outcome. (Id.). On August 26, 2021, plaintiff was discharged from Vidant Health Medical Center with paraplegia, bowel incontinence, and neurogenic bladder. (Id.).

Plaintiff was returned to the North Carolina Department of Adult Corrections at Central Prison due to his paraplegia and causa equina syndrome. (Id.). On June 10, 2022, plaintiff was transferred to Maury Correctional Center, where he remained in custody until his release on July 13, 2023. (Id.). Currently, plaintiff is a T10 paraplegic, requiring the use of a wheelchair, and continues to have periodic loss of bladder and bowel control. (Id.).

**COURT'S DISCUSSION**

A. First Motion to Dismiss

Where plaintiff amended his complaint after defendants filed their first motion to dismiss, and defendants filed a second motion to dismiss, the first motion to dismiss is denied as moot.

B. Second Motion to Dismiss

    1. Standard of Review

9

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[4]

2.      Analysis

As noted above, plaintiff alleges defendants were deliberately indifference towards his serious medical needs when they delayed medical care for plaintiff's spinal cord injury. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). The first prong is objective – the inmate must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241

---

[4]        Internal citations and quotation marks are omitted from all citations unless otherwise specified.

10

(4th Cir. 2008). In addition, for claims involving delayed medical care,

> Mere delay is . . . not enough. Rather, the objective prong requires [the plaintiff] to show that the alleged delay put him at a substantial risk of serious harm. A commonplace medical delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation, absent the unusual circumstances where the delay itself places the prisoner at substantial risk of serious harm, such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature.

Moskos v. Hardee, 24 F.4th 289, 298 (4th Cir. 2022).

The second prong is subjective – the inmate must show that "subjectively the officials acted with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379. The mental state for "deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer, 511 U.S. at 837. A plaintiff therefore must allege the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

Deliberate indifference is thus "a particularly high bar to recovery." Iko, 535 F.3d at 241. For claims involving medical care, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or medical malpractice in diagnosis or treatment are not exceptional circumstances. See id.; see also Estelle v. Gamble, 429 U.S. 97, 105–08 (1976).

11

Here, defendants concede that plaintiff's spinal cord injury was a serious medical need. (Def's Mem. (DE 83) at 14).   Plaintiff, however, does not plausibly allege defendants Robertson and Brock had knowledge of plaintiff's injury and the risk posed by their action or inaction.   After plaintiff informed defendant Robertson of his injury, he immediately sought help from a supervisor.   (SAC (DE 81) at 13–14).   Further, once informed plaintiff was in pain and could not feel or move his legs, defendant Brock returned with a wheelchair and transferred plaintiff to the medical unit.   Accordingly, plaintiff has not sufficiently alleged the subjective prong against defendants Robertson and Brock.

Regarding defendants Shana Lewis ("Lewis"), Andrea Pino ("Pino"), and Bridget White ("White"), other than generally alleging these defendants were "healthcare providers," plaintiff does not allege they were involved in plaintiff's care during the time period between July 30 and August 2, 2021.   Thus, plaintiff has not alleged specific facts showing that these defendants were aware of a serious medical need and disregarded it under the standard set forth above.   See Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

However, at this stage in the proceedings, plaintiff has plausibly alleged the subjective prong as to the remaining defendants.   The allegations, construed in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, establish that medical defendants Leggett, Brown, Licavoli, Gregio, and Goff, and officer defendants Gibbs, Holt, Jones, Norris, Partin, and Reckley effectively ignored his serious medical need –   a spinal cord injury causing back pain and inability to feel or move his legs – for 3 days.   (See id. at 14–31).   While it is true

12

that defendants Leggett and Brown evaluated plaintiff and recommended rest and muscle relaxers, at the pleading stage the court cannot find that this course of treatment was sufficient under the circumstances, particularly where plaintiff could not walk, had to be placed in his bed by correctional officers, did not move from his cell bed until removed by stretcher on August 2, 2021, could not feel or move his legs, had to have correctional officers deliver his food tray to him in his bed contrary to prison policy, and lost bladder control. See De'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013) (explaining a "total deprivation of care is not a necessary condition for finding a constitutional violation"). "Medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Gordon v. Schilling, 937 F.3d 348, 360 (4th Cir. 2019). While the factual record may support defendants' claim that this case establishes no more than a disagreement about the proper course of medical care, plaintiff has alleged sufficient facts for the court to draw a reasonable inference that defendants were deliberately indifferent. (See SAC (DE 81) 17).

Further, regarding the remaining medical and non-medical defendants, such defendants observed plaintiff over a period of days. As noted above, plaintiff could not move from his cell bed, could not feel or move his legs, and had meals delivered to him. Defendants' assertion that plaintiff was attempting to "walk it off" is belied by plaintiff's allegations that he could in fact not walk and required a wheelchair to be transported to the medical unit. (See id. at 16–17). Accordingly, plaintiff has sufficiently alleged such defendants had actual subjective knowledge of both plaintiff's serious medical condition and the excessive risk posed by their inaction. See Jackson, 775 F.3d at 178.

With respect to defendants' assertion of qualified immunity, in this context the inquiry is

13

subsumed by the merits determination of whether plaintiff alleges sufficient facts to state a claim for deliberate indifference.   See Pfaller v. Amonette, 55 F.4th 436, 446–48 (4th Cir. 2022) ("But in some cases . . . the court need not separately determine whether the constitutional right was clearly established if there remains a genuine issue of material fact as to an official's deliberate indifference, because that potential deliberate indifference would, if established, necessarily include an awareness of the illegality of one's actions"); Thorpe v. Clarke, 37 F.4th 926, 938–40 (4th Cir. 2022).

## CONCLUSION

Based on the foregoing, defendants' first motion to dismiss (DE 77) is DENIED as moot. Defendants' second motion to dismiss (DE 82) is GRANTED in part and DENIED in part. Defendants' motion is granted as to defendants Lewis, Pino, and White, Robertson, and Brock, and these defendants are DISMISSED from this action.   The motion is denied as to the remaining defendants.   The clerk shall issue initial order after defendants files answers to the complaint.

SO ORDERED, this the 25th day of March, 2026.

_____
LOUISE W. FLANAGAN
United States District Judge

14